Filed 10/21/20  P. v. Johnson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RYEHEEM EVANS JOHNSON,<br><br>    Defendant and Appellant. | D075536<br><br><br>(Super. Ct. No. SCD274236) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

A jury convicted Ryeheem Evans Johnson of two counts of first degree burglary (Pen. Code,[1] §§ 459, 460; counts 1 and 4), two counts of grand theft (§ 487, subd. (a); counts 3 and 5), one count of petty theft (§ 484, subd. (a); count 2), and one count of unlawful possession of a firearm (§ 29900, subd. (a)(1); count 6). Johnson admitted allegations of probation denial priors (§ 1203, subd. (c)(4)), a prison prior (§§ 667.5, subd. (b), 668), two serious felony priors (§§ 667, subds. (a)(1), (b)–(i), 668, 1192.7, subd. (c)), and two strike priors (§§ 667, subds. (b)–(i), 668, 1170.12) involving burglaries. The court struck one of the strike priors and did not impose a sentence enhancement for the prison prior. The court sentenced Johnson to a total term of 15 years eight months in state prison.

Johnson contends the court erred by: (1) denying his motion to dismiss the case based on violations of his federal and state rights to a speedy trial, (2) denying his motion to dismiss the case based on the police department's intentional destruction of evidence, (3) instructing the jury with CALCRIM No. 372 regarding flight, and (4) imposing fines, fees, and assessments without determining his ability to pay. He also contends the cumulation of errors deprived him of his constitutional rights to a fair trial and due process. We conclude there is no merit to Johnson's first three contentions and he forfeited any challenge to the fines, fees, and assessments. Since we conclude there is no prejudicial error, there is no basis for reversal based on any cumulative effect of the claimed errors. We, therefore, affirm the judgment.

---

[1] Statutory references are to the Penal Code unless otherwise stated.

II

BACKGROUND[2]

A

*Z Street Burglary*

The owners of a home on Z Street left for work around 7:00 a.m. on September 28, 2015. The husband returned home around 5:00 p.m. and noticed the front door was open, but the metal security door was locked. As he entered the home, he noticed a window was broken and a vase by the window was knocked over and broken. In the bedroom, the homeowners' personal belongings were thrown on the floor and a small safe had been forced open. The husband called the police.

The homeowners discovered several pieces of jewelry were missing, including the husband's wedding ring and about $200 in cash. The homeowners believed the value of the stolen property substantially exceeded $950.

Surveillance footage showed an individual ring the doorbell around 10:00 a.m. The individual then walked away from the door and turned toward a side entrance to the home. Approximately 30 to 40 minutes later, the individual walked away from the home carrying a bag. The husband identified Johnson in court as the intruder depicted on the surveillance videos.

---

[2] We use generic terms to protect personal privacy interests of the victims and other individuals in which personal privacy interests support not using the person's name. (Cal. Rules of Court, rule 8.90(b)(4) and (10).) For the same reason, we identify the homes by abbreviated street names.

B

*M Avenue Burglary*

On October 5, 2015, the owner of a home on M Avenue left for work around 8:00 a.m. When the homeowner returned home between 2:15 and 2:30 that afternoon, he noticed shattered glass on the kitchen floor from a side door leading into the kitchen.

A kitchen drawer was open and a knife was missing from the drawer. A closet door where the homeowner kept his security equipment was open. The security system monitor was lying broken on the floor, cables for the internet were cut, and the modem, router, and booster were missing. However, the cables for the surveillance system and the recording device remained intact. The homeowner called the police.

In a bedroom, jewelry boxes were open and lying on the ground. A digital video recording device was missing. A digital key lock for the master bedroom had been pried open. Several electronic devices were missing including a phone, tablet, laptop, and camcorder along with a stamp collection, a set of tools, and a handgun. The value of the property taken exceeded more than $1,000.

The homeowner called the police and provided them with surveillance video. The home's surveillance system captured the intruder approach the front door at approximately 1:50 p.m. The individual had a cell phone in his hands. A few minutes later, the person left the front door and went to a side gate. The person walked back and forth in the backyard and tried to open sliding doors. The person eventually entered the home through a door near the kitchen.

Once inside the home, the person took a knife from the kitchen and went through the home.  The person took a suitcase from the master bedroom and packed it with the homeowner's personal property.

## C

### *Police Investigations*

#### 1

Detective R. reviewed the Z Street surveillance video.  He did not recognize the person on the video and created a be-on-the-lookout (BOLO) flyer, which he disseminated throughout the county to different law enforcement agencies.  Detective R. received one call in 2015 from another detective about a possible suspect.  However, after comparing the possible suspect's previous booking photo, the detective did not believe it was the individual who committed the Z Street burglary.  The suggested suspect appeared older than the Z Street perpetrator.

The police impounded a piece of glass, a silver ring, a gold earring, and a locking mechanism found outside the Z Street residence.  Fingerprint testing of the glass and the lock did not produce any leads.

The lock, the ring, and the earring were booked under a request for a "DNA hold."  DNA can help solve cases if someone touched an item.  The crime lab did not perform DNA testing on the items and informed the detective it would not test the items for touch DNA.  Detective R. inactivated the investigation in October 2015.

In July 2017, the property room sent an e-mail asking the detective if it could dispose of the property found outside the Z Street home.  Detective R. approved the request to destroy the evidence because he did not believe the police would solve the burglary after finding no leads in 2015 or 2016.

In November 2017, an officer in another agency put Detective R. in contact with a detective in Simi Valley. Together, they identified Johnson as the suspect. Detective R. requested Johnson's arrest. He also notified the detective investigating the M Avenue burglary because the suspect in the BOLO flyer for that case appeared to be the same suspect in the BOLO flyer for the Z Street burglary.

It is a policy and procedure of the San Diego Police Department to retain evidence collected from a crime scene until a case is closed as a result of a plea, a verdict, or the expiration of the statute of limitations. The statute of limitations in a residential burglary case is three years. Detective R. approved destruction of the evidence from Z Street more than a year before the statute of limitations expired.

2

Detective S. investigated the M Avenue burglary. She met with the homeowner and obtained a copy of the surveillance footage, which showed the perpetrator outside and inside the home. Detective S. did not recognize the individual in the videos.

Detective S. created and disseminated a BOLO flyer with still shots from the surveillance video. Detective R. contacted her after viewing the flyer. They believed the two cases were related because the suspect was wearing the same pants during both incidents. Video from both the M Avenue and Z Street burglaries appeared to show the same suspect wearing the same skinny jeans with rips at the knees and zippers across each leg.

The same detective who suggested a suspect for the Z Street burglary contacted Detective S. about the M Avenue burglary. Detective S. reviewed information about the possible suspect, but did not believe it was the perpetrator who committed the M Avenue burglary because the suggested

suspect appeared older than the person on the surveillance videos. Detective S. obtained no other leads on the case in 2015 and 2016. She did not believe they were going to solve the case because she had exhausted all leads and could not identify the suspect.

Detective S. became aware of Johnson as a suspect in November 2017. After comparing his photo with the photo from the M Avenue video, she determined it was the same person and requested his arrest.

3

A property crimes detective with the Simi Valley Police Department testified he investigates residential burglaries. He regularly works with the burglary and robbery task force for the major crimes bureau of the Los Angeles County Sheriff's department. In his experience, individuals who commit residential burglaries often commit the burglaries in areas outside of where they live so they can avoid detection.

Johnson lived in Los Angeles in 2015 and had a telephone number ending in 2610. The Simi Valley detective lawfully obtained Johnson's phone number and phone records from August 20 through October 20, 2015. He initiated pings to Johnson's phone beginning October 1, 2015.

The detective rereviewed Johnson's records in October 2017 and noticed Johnson's phone was active in the San Diego area on September 28, 2015, based on cell phone tower data. The Simi Valley detective contacted a detective in the San Diego County Sheriff's Department and learned a burglary occurred near the cell tower where Johnson's phone was active. The sheriff's department put him into contact with the San Diego Police Department.

Cell tower data showed Johnson's phone connected to a tower near the Z Street residence several times on September 28, 2015, between 10:06 a.m.

7

and 10:46 a.m., which is approximately the same time surveillance footage showed the perpetrator at the house holding a phone. The phone accessed a tower in Long Beach in the early afternoon and then accessed cell towers in the vicinity of South-Central Los Angeles before ping data showed the phone at Johnson's residence. Johnson's phone was offline on the day of the M Avenue burglary.

The Simi Valley detective, who knew Johnson, reviewed the surveillance footage of both San Diego robberies and believed Johnson committed both crimes. Johnson had the same facial tattoos in 2015 as he had in 2017, including a cross between his eyebrows and tattoos around his eyes. The perpetrator in the Z Street robbery had the same cross on the forehead and the same tattoos near the eyes.

In the M Avenue surveillance footage, the Simi Valley detective also recognized the perpetrator as Johnson and noted areas on the perpetrator's face that were consistent with Johnson's tattoos. He also believed the perpetrator wore similar jeans in both burglaries.

III

DISCUSSION

A

*Motion to Dismiss for Delay in Prosecution*

1

Johnson contends the court erred in denying his motion to dismiss for the two-year delay in filing the burglary charges against him in violation of his state and federal rights to a speedy trial under the Sixth Amendment. The People ask us to summarily reject the argument advanced on appeal because speedy trial rights are not implicated by prearrest delay. In reply, Johnson argued the precharging delay denied his due process rights.

The People are correct that a defendant's "state and federal constitutional speedy trial rights (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1) do not attach before the defendant is arrested or a charging document has been filed." (*People v. Abel* (2012) 53 Cal.4th 891, 908 (*Abel*).) " 'Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation:  his situation does not compare with that of a defendant who has been arrested and held to answer.' " (*People v. Martinez* (2000) 22 Cal.4th 750, 760.)

"Although precharging delay does not implicate speedy trial rights, a defendant is not without recourse if the delay is unjustified and prejudicial." (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250 (*Nelson*).)  The statute of limitations is generally the "primary guarantee against overly stale criminal charges." (*Abel*, *supra*, 53 Cal.4th at p. 908.)  However, " '[d]elay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions.' " (*Nelson*, at p. 1250.)

Johnson's motion focused primarily on the right to a speedy trial under the Sixth Amendment, but it also intertwined arguments about denial of due process rights based upon precharging delay.  The court considered the motion after the trial.  Despite discussions between the court and counsel using the term "speedy trial," the court generally referred to cases involving precharging delay and concluded Johnson was not denied a fair trial under a due process analysis.  Moreover, "a ruling will not be disturbed on appeal merely because it was given for a wrong reason, if the ruling would otherwise be correct ' " 'upon any theory of the law applicable to the case,' " ' and ' " 'regardless of the considerations which may have moved the trial court to its conclusion.' " ' " (*People v. Hopson* (2017) 3 Cal.5th 424, 459; *People v.*

*Mirenda* (2009) 174 Cal.App.4th 1313, 1330.)  Therefore, we consider the issue under the due process analysis.

2

We begin with the general principles guiding our analysis.  A defendant seeking to dismiss a charge for denial of the right to a fair trial and to due process of law under the state and federal Constitutions, "must demonstrate prejudice arising from the delay.  The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay.' " (*Nelson, supra*, 43 Cal.4th at p. 1250.)

Prejudice from a precharging delay is not presumed.  (*Abel, supra*, 53 Cal.4th at pp. 908–909.)  "To establish a due process violation, the defendant must prove the existence of actual harm, 'such as by showing the loss of a material witness or other missing evidence, or fading memory caused by the lapse of time.'  [Citations.]  'If the defendant establishes prejudice, the prosecution may offer justification for the delay; the court considering a motion to dismiss then balances the harm to the defendant against the justification for the delay.  [Citation.]'  [Citation.]  'The balancing task is a delicate one, "a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial.  [Conversely], the more reasonable the delay, the more prejudice the defense would have to show to require dismissal." [Citation.]'  [Citation.]  At bottom, the court must ascertain whether the precharging delay tilted the playing field against the defendant in such a way that it prevented him from receiving a fair trial." (*People v. Booth* (2016) 3 Cal.App.5th 1284, 1302–1303.)

"When … there is both prejudice from, as well as justification for, the precharging delay that occurred, the question of whether the delay violated

10

due process will often depend on the strength of the prosecution's case. [Citation.] If the evidence of the defendant's guilt is strong, the likelihood of consequential prejudice from the precharging delay is reduced and a longer delay will be tolerated, but if the evidence against the defendant is weak, the claimed prejudice will take on added significance and enhance the probability of an unfair trial." (*Booth*, *supra*, 3 Cal.App.5th at p. 1310.)

" 'We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them [citation].' " (*People v. Jones* (2013) 57 Cal.4th 899, 922.)

3

Johnson contends he was prejudiced by the delay charging him with the burglaries because: (1) memories of witnesses, including his own, were affected by the passage of time and he could not recall where he was on the days of the burglaries or his phone number at the time of the burglaries, (2) physical evidence was destroyed related to the Z Street burglary that could have been tested for touch DNA, (3) the defense was unable to investigate the other suspect the detectives considered in 2015, (4) the defense was unable to investigate other suspects mentioned by the victim of the M Avenue burglary, and (5) by the time of trial, video footage before and after the footage shown to the jury had been taped over and destroyed.

The court considered Johnson's argument that the delay in his arrest inhibited his ability to show where he was on the days of the burglaries and prevented DNA testing of some items at the crime scene, which might have shown another person's DNA on the objects. The court agreed the police were negligent in disposing of items of evidence. However, the court expressed doubt that testing would have proven Johnson was not involved, even if

11

testing suggested someone else's DNA on the objects. The court noted the telephone records placed Johnson in the area of the burglary, he wore the same pair of pants during both the Z Street and M Avenue burglaries, and he was identified from the videos by both the investigating detectives and individuals who knew him. The court commented the jurors also had an opportunity to identify Johnson as the burglar from the videos shown at trial.

There is substantial evidence to support the court's determination in this regard. Johnson's probation officer (known only to the jurors as someone who knew him) testified Johnson left a message giving his phone number as the same number that was shown to be active in the area of the burglaries. Johnson had unique facial tattoos, which were visible on the videos. The jeans Johnson wore were similar, if not the same, on each occasion. Both the probation officer and the Simi Valley detective who knew Johnson identified him on the videos as the perpetrator of both burglaries.

The court did not believe Johnson was prejudiced from the loss of additional hours of video footage from Z Street, commenting that even if additional video footage had been kept and somehow had shown someone else entering the home, it would not detract from the guilt of Johnson, who was clearly visible in the video. Johnson was seen entering the backyard where the window was broken and, 40 minutes later, seen again walking away from the residence carrying a bag of property.

The court did not believe the police were negligent in failing to pursue all possible leads. They issued all-points bulletins for each burglary to various local police agencies. The court found it unreasonable to suggest the detectives should have sent the notice throughout the state or to other jurisdictions. The court concluded they were not negligent in failing to reach out to pawnshops because the jewelry was unmarked and it was unlikely a

12

perpetrator would take a gun to a pawnshop since it has an identifying serial number and shops will not take it without such a number. The court noted the two investigating detectives looked at another possible suspect based on a lead, but after examining booking photos of the possible suspect, neither believed the individual was the person in the video.

The court rejected the contention that the Simi Valley detective was negligent for failing to contact the local officers earlier. The court commented it would not be reasonable to require a detective in Simi Valley to contact every police agency where Johnson's phone might have activated in 2015.

The court concluded by saying, "I think there was negligence as I said by the police department as to the [Z] Street address, which is the September 28th burglary. I think this potentially could have prejudiced the defendant because it wasn't able to be tested. I think it's a bit farfetched. But in any case, I go to the third part of this, and has the [district attorney] carried its burden to show the prejudice did not prevent the defendant from having a fair trial on both burglaries. As to the October 5th … you don't have the phones, but you do have the pants, you have the face. And if you look at the videos, you see the stature of the two individuals on September 28th and October 5th. And the stature and the way they carry their body is quite similar, and then you got something the jury could consider." Therefore, the court denied the motion to dismiss as to either burglary.

The court considered the arguments presented by Johnson regarding prejudice from the precharging delay and found only the loss of the physical evidence from the Z Street burglary to be potentially prejudicial. The court determined, on balance, the reasons for delay were reasonable and Johnson was not denied a fair trial given the strong evidence connecting him to the crimes. We conclude substantial evidence supported the court's factual

13

findings and the court did not abuse its discretion in denying the motion to dismiss. (See *People v. Lazarus* (2015) 238 Cal.App.4th 734, 760.)

B

*Motion to Dismiss for Destruction of Evidence*

1

Johnson contends the court erred in denying his motion to dismiss based on destruction of items of evidence by the police. The People contend Johnson did not demonstrate either that the evidence was exculpatory or that the police acted in bad faith.

2

We begin with the evidence before the court on the motion to dismiss. Johnson moved prior to trial to dismiss the charges against him based upon the failure to preserve a piece of broken glass and some jewelry collected outside the Z Street residence. The defense contended touch DNA analysis could have revealed potentially exculpatory evidence.

The court conducted a hearing outside the presence of the jury pursuant to Evidence Code section 402. An officer who investigated the Z Street burglary collected a piece of broken glass as well as two rings and an earring scattered outside the residence. The officer returned one piece of jewelry to the victim and impounded the other items, holding them for fingerprint and DNA testing.

Fingerprint testing was performed on the piece of glass, but no fingerprints could be lifted. Detective R. generated a BOLO flyer for the Z Street burglary because he had no further information to solve the case. Another detective contacted him about a possible suspect. However, upon review of the potential suspect's photo, Detective R. determined it was not the same person and did not further investigate that suspect. Detective S.,

14

who investigated the M Avenue burglary, also reviewed information about the potential suspect and, likewise, did not believe the potential suspect was the same person who committed the two burglaries they were investigating. Detective R. inactivated the Z Street investigation in October 2015.

In July 2017, about a year before the statute of limitations expired for the case, Detective R. received an e-mail from the property room asking to approve destruction of the evidence collected from Z Street. He approved the request. Detective R. denied intentionally destroying the evidence to prevent a defense. The case was inactive and Detective R. did not believe the police could solve the crime at the time he approved the destruction of the evidence.

A forensic DNA consultant stated it would have been possible to obtain touch DNA from the items of property. The consultant agreed touch DNA is not always left on items, even if they are handled for 20 to 30 minutes.

Surveillance video from the M Avenue burglary showed the perpetrator wearing gloves in the house, but not wearing gloves outside the house. The forensic consultant agreed wearing gloves could impact DNA transfer.

The forensic consultant also stated smooth material, such as glass, would be less likely to maintain skin cell DNA than a more porous or rough item. A ring or an earring, which are usually nonporous, would be more likely to have DNA from the person who wore the item rather than someone who handled it briefly. Touch DNA is less likely to lead to an identifiable DNA sample than body fluid.

After hearing the evidence, the court stated it thought there was some possibility that DNA might have been found on the items that were destroyed, albeit an outside possibility. It believed the police department was negligent in destroying the evidence, but the court did not believe the evidence was destroyed in bad faith. As a result, the court did not believe

15

dismissal was the appropriate sanction. Instead, the court thought the defense was entitled to a jury instruction on the issue. The court invited counsel to look at Evidence Code section 412 for guidance on such an instruction. The court denied the motion to dismiss, but gave the jury a cautionary instruction based on Evidence Code section 412.

3

Law enforcement agencies have a duty to preserve evidence "that might be expected to play a significant role in the suspect's defense." (*California v. Trombetta* (1984) 467 U.S. 479, 488. To fall within the scope of this duty, evidence must be "constitutional[ly] material[]," meaning it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Id.* at p. 489.) California has adopted the *Trombetta* standard. (See *People v. Beeler* (1995) 9 Cal.4th 953, 976–977.)

If "no more can be said [of the evidence] than that it could have been subjected to tests, the results of which might have exonerated the defendant," a due process violation will be found only if law enforcement acted in bad faith. (*Arizona v. Youngblood* (1988) 488 U.S. 51, 57 (*Youngblood*); *People v. Alvarez* (2014) 229 Cal.App.4th 761, 773 ["[I]f the best that can be said of the evidence is that it was 'potentially useful,' the defendant must also establish bad faith on the part of the police or the prosecution."].)

Negligent destruction or failure to preserve potentially exculpatory evidence, without evidence of bad faith, will not give rise to a due process violation. (*Youngblood*, *supra*, 488 U.S. at p. 58.) A finding as to "whether evidence was destroyed in good faith or bad faith is essentially factual: therefore, the proper standard of review is substantial evidence." (*People v.*

*Memro* (1995) 11 Cal.4th 786, 831.)  On review, an appellate court must determine whether, viewing the evidence in the light most favorable to the trial court's finding, there was substantial evidence to support its ruling.  (*People v. Carter* (2005) 36 Cal.4th 1215, 1246.)

The court here concluded there was potentially some exculpatory value to the items of property recovered outside the Z Street residence because it was possible to recover a touch DNA profile from the items.  Although Johnson contends the destruction of the evidence deprived him of the best evidence to support his defense that he was not the perpetrator, the consultant's testimony only showed a possibility of recovering DNA from the items of property.  Whether the recovery of any such DNA would have proven exculpatory was speculative given the nature of the items.  As such, the court would have been justified in determining there was no exculpatory value because mere speculation about the exculpatory value of the evidence is inadequate to establish a due process violation.  (*People v. Alexander* (2010) 49 Cal.4th 846, 878–879; *People v. Cook* (2007) 40 Cal.4th 1334, 1348–1351.)  Nevertheless, the court gave Johnson the benefit of the doubt and determined the destroyed evidence was potentially exculpatory.  We conclude the court's finding is supported by substantial evidence based on the testimony of the forensic DNA consultant.

Proceeding to the next step of the analysis, the court concluded the destruction of the evidence was negligent, but was not done in bad faith.  We conclude there was substantial evidence to support this finding as well.  Detective R. agreed he approved the destruction of the evidence before the expiration of the statute of limitations and did so in violation of department policies and procedures.  However, no fingerprints could be recovered from the glass and Detective R. ruled out the only potential lead he obtained from

17

the BOLO flyer. The case was inactive when he was asked to approve the property destruction. Detective R. did not believe the case would be solved because he felt he had exhausted any leads to identify the perpetrator. Detective R. testified he did not intentionally destroy the evidence to interfere with a possible defense. In fact, surveillance video was maintained. Detective R. was not aware of Johnson as a potential suspect until he was later contacted by the detective from Simi Valley. This evidence shows Detective R. approved the destruction of the evidence because he believed the case would not be solved. The fact that he was mistaken amounts to negligence, not bad faith.

If a defendant demonstrates that significant exculpatory evidence was lost or establishes bad faith relating to the loss of potentially useful evidence, then the trial court has discretion to impose appropriate sanctions, including giving an appropriate jury instruction. (*People v. Medina* (1990) 51 Cal.3d 870, 894.) Without a showing of bad faith to support a due process violation, the trial court is not required to impose a sanction, even by giving a jury instruction. (*People v. Cooper* (1991) 53 Cal.3d 771, 811 (*Cooper*) ["Although an adverse instruction may be a proper response to a due process violation [citation], there was no such violation in this case. The trial court was not required to impose *any* sanction, including jury instructions."]; *People v. Farnam* (2002) 28 Cal.4th 107, 167 [trial court did not err "in refusing defendant's instructional sanction" where defendant failed to show bad faith in state's failure to preserve biological evidence that might have been subjected to tests]; *People v. Roybal* (1998) 19 Cal.4th 481, 509, 511 [no error in denying an instruction regarding inadvertent loss of fingerprint evidence from a doorjamb where evidence did not have apparent exculpatory value].)

In this case, Johnson demonstrated the loss of the possible exculpatory evidence was due to negligence, not bad faith. Thus, the court was not required to impose any sanction because the mere negligent failure to preserve potentially useful evidence does not deny due process. (*People v. Ochoa* (1998) 19 Cal.4th 353, 417 [affirming denial of sanctions for negligent loss of photographic shoe print evidence which was not exculpatory].)

Nevertheless, the court considered sanction options. The court concluded dismissal was not an appropriate sanction. Although not required to do so, the court exercised its discretion to give the jury a cautionary instruction. Contrary to Johnson's suggestion in the opening brief, defense counsel did not forget to ask for a cautionary jury instruction.

The court and counsel discussed options for a jury instruction. Defense counsel requested an instruction based upon Evidence Code section 412. The prosecutor preferred an instruction drafted by the court. The court explained Evidence Code section 412 has been used in criminal cases and "provides an adequate platform for both of you to argue." The court gave the instruction requested by the defense: "If weaker and less satisfactory evidence is offered when it was within the power of the Police to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."

Defense counsel argued in closing statements, based on Evidence Code section 412, that the jury should view the evidence with distrust because the police failed to do their jobs, failed to follow up on leads, and violated police policies and procedures. Defense counsel argued the destruction of evidence was important because if DNA testing had been done on the property and on the other potential suspect, "we'd be in a different situation." Thus, the court permitted Johnson to "take his 'best shot' before the jury, and present evidence regarding deficiencies in the investigation to try to discredit the case

19

against him. 'This was adequate to insure a fair hearing and was itself a sufficient sanction.' " (*Cooper, supra*, 53 Cal.3d at pp. 811–812.) The court did not abuse its discretion in denying the motion to dismiss.

C

*Flight Instruction*

Johnson contends the court erred in giving CALCRIM No. 372 regarding flight at the request of the prosecutor and over the objection of defense counsel. We disagree.

"We review a claim of instructional error de novo. [Citation.] The challenged instruction is considered 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 326.)

" 'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." ' [Citations.] Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.] To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)

The prosecutor requested the flight instruction based on an offer of proof that the evidence would show Johnson immediately left San Diego County after the Z Street burglary and drove to Los Angeles. The prosecutor

20

argued this showed consciousness of guilt. The court asked to hear the evidence.

The detective from Simi Valley testified Johnson's phone connected to a tower near the Z Street residence several times during the Z Street burglary on September 28, 2015. Shortly thereafter, the phone connected to towers moving north to Long Beach, Los Angeles, and then was active at Johnson's home.

After this testimony, the court reconsidered the issue, discussing several cases with counsel, and hearing arguments from both sides. The court stated, "I agree there's no urgency when he leaves the house. He just walks away. But it looks like there's some urgency in leaving San Diego County." The court concluded by saying, "I think it's a jury question. The jury could easily say, 'So what, this is not flight.' And in any case, they can't use it to convict in itself."

The court gave CALCRIM No. 372 stating, "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

The pattern instruction is based on section 1127c, which requires an instruction using substantially similar language in any trial or proceeding where the prosecution relies on evidence of the flight of a defendant to show guilt. " ' "[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested." ' [Citation.] '*Mere* return to familiar environs from the scene of an alleged crime does not

21

warrant an inference of consciousness of guilt [citations], but the *circumstances* of departure from the crime scene may sometimes do so.' " (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)

We conclude the court did not err in giving the requested flight instruction. There was evidence not only that Johnson's phone moved quickly from the area of the Z Street burglary to Los Angeles, but also that individuals who commit residential burglaries often target areas outside their home area to avoid detection. A rational juror could believe the evidence in this case showed Johnson left the county quickly to avoid detection warranting an inference of consciousness of guilt.

Further, the instruction did not lower the prosecutor's burden of proof or otherwise violate his rights to due process. The instruction advised the jury that flight alone could not prove guilt. It left to the jury's determination "both the existence and significance of flight." (*People v. Crandell* (1988) 46 Cal.3d 833, 870.)

Even if we could conclude there was error, which we do not, given the strength of the video evidence against Johnson, any error in giving the flight instruction was harmless under any standard. (*Chapman v. Cal.* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

D

*Fines, Fees, and Assessments*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Johnson contends the court violated his constitutional rights of due process and protection against excessive fines by imposing fines and fees without determining he has the ability to pay them. Johnson asks us to vacate the fines and fees or, alternatively, remand the matter for the trial court to hold a

22

hearing about Johnson's ability to pay. We conclude Johnson forfeited this claim.

"At the core of the *Dueñas* opinion is its holding that imposition of fines, fees or assessments without a hearing on ability to pay denies due process. It was that court's view it was the trial court's duty to hold a hearing and thus failure to seek a hearing did not result in forfeiture. Further, the court found that the burden to prove 'present' ability to pay was on the prosecution. Other courts, including this court, have disagreed with *Dueñas* on these key principles." (*People v. Keene* (2019) 43 Cal.App.5th 861, 863; see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 327, review granted Nov. 26, 2019, S258946 [rejecting the *Dueñas* due process analysis for fines and fees]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 [applying excessive fine analysis for restitution fines]; and *People v. Kopp* (2019) 38 Cal.App.5th 47, 95–96 (*Kopp*), review granted Nov. 13, 2019, S257844 [concluding a defendant who requested ability to pay hearing bears burden of proof and applying due process analysis to court assessments and excessive fines analysis to restitution fines].)

We conclude it is not necessary for us to reach these broader issues in this case and it is not prudent for us to do so since the Supreme Court is currently considering the viability of *Dueñas* as it pertains to a criminal defendant's ability to pay assessed fines and fees.

The jury returned guilty verdicts in August 2018. He was sentenced on January 25, 2019. Prior to sentencing, the probation department prepared a report indicating Johnson was 25 years old at the time of sentencing and had no psychological or medical problems. He obtained his GED and enjoyed producing music and art. Although he stated his financial situation was not "the best" he admitted he "was fortunate to always have financial support

23

from family." He planned to pursue music, start a business, or follow in his father's footsteps for a career in real estate.

The probation department recommended a restitution fine in the amount of $3,300 (Pen. Code, § 1202.4, subd. (b)), an additional restitution fine in the amount of $3,300 (Pen. Code, § 1202.45) to be stayed unless Johnson's supervision is revoked, a court security fee in the amount of $2,000 (Pen. Code, § 1465.8), an immediate critical needs account fee in the amount of $1,500 (Gov. Code, § 707373), a criminal justice administration fee in the amount of $154 (Gov. Code, § 29550.1), a theft fine in the amount of $39 (Pen. Code, § 1202.5), and restitution to the victims in amounts to be determined by the court.

The court imposed the fines, fees, and assessments as recommended. Defense counsel did not object to the fines and fees and there was no further discussion of the issue at the hearing. The court found Johnson indigent so he was not required to pay his attorney fees, which the court indicated would have been substantial given his representation.

Penal Code section 1202.4 authorizes a restitution fine of up to $10,000 in felony cases, and requires a sentencing court to impose a minimum fine of $300 notwithstanding a defendant's inability to pay that amount. *Dueñas* considered whether a minimum fine imposed under the statute was constitutional. But even before the *Dueñas* decision, which was issued only weeks before Johnson's sentencing hearing, it was clear that a defendant's ability to pay was a relevant consideration in determining whether to impose a restitution fine greater than the statutory minimum. (§ 1202.4, subds. (c) and (d).)

It was defendant's burden to explain to the court why it should impose a lesser amount than was proposed. (§ 1202.4, subd. (d); *People v. Avila*

24

(2009) 46 Cal.4th 680, 729.) Notwithstanding some broad language in *Dueñas*, cases since then—including decisions from the same court that decided *Dueñas*—have concluded that even when challenging a minimum fine, defendants bear the initial burden of (1) advising the court that they are unable to pay the fines and/or fees that the court proposes to assess, and (2) introducing minimal evidence to support that assertion. (E.g., *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed"]; *Kopp, supra*, 38 Cal.App.5th at p. 96 ["it is Appellants' burden to make a record below as to their ability to pay these assessments"].) The failure to do so means an appellate challenge based on ability to pay is forfeited. (*Avila,* at p. 729.)

Johnson was obligated to tell the court not merely that the maximum fine of $10,000 was excessive, but also that the lesser fine proposed was too much if he was unable to pay that amount. Having failed to do so, the argument regarding his inability to pay the assessed restitution fine is forfeited. (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033.) Moreover, because he did not object to the restitution fine, Johnson similarly forfeited any challenge to the lesser imposed fees and assessments. (*Ibid*.)

E

*Cumulative Error*

Because we find no prejudicial error as to each of Johnson's asserted claims, it follows that any cumulative effect of the claimed errors " ' "does not warrant reversal of the judgment." ' " (*People v. Jablonski* (2006) 37 Cal.4th 774, 825.)

25

## IV

## DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:



BENKE, J.



O'ROURKE, J.